GREEN BAY EDUCATION ASSOCIATION, Janette Meverden and Richard Feldhausen, Petitioners-Appellants,†

v.

State of Wisconsin, DEPARTMENT OF PUBLIC INSTRUCTION and Herbert J. Grover, State Superintendent of Public Instruction, Respondents.

Court of Appeals

*No. 89-1047. Submitted on briefs December 14, 1989.—Decided February 6, 1990.*

(Also reported in 453 N.W.2d 915.)

† Petition to review denied.

656

For petitioners-appellants there were briefs by *Robert C. Kelly* and *Carol L. Rubin* of *Kelly and Haus,* Madison.

For respondents there was a brief by *Donald J. Hanaway,* attorney general, and *Warren D. Weinstein,* assistant attorney general of the *Wisconsin Department of Justice,* Madison.

For the Wisconsin Education Association Council there was an amicus curiae brief by *Melissa A. Cherney,* Madison.

For the Wisconsin Association of School Boards, Inc., there was an amicus curiae brief by *Kenneth B. Axe* and *Jean M. Williams* of *Lathrop & Clark,* Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. The Green Bay Education Association and Janette Meverden and Richard Feldhausen, two teachers in the Green Bay area school district, (the association), appeal a decision affirming a State Department of Public Instruction's (the department) ruling. The department ruled that the Northeastern Wisconsin Technical Institute, a vocational, technical and adult education school (VTAE), instructors under a contract between the Green Bay area school district and the VTAE did not require department certification. The association contends that sec. 118.19(1), Stats., requires all teachers of public school students to be department certified. It further contends that the existence of different requirements for certification of public school teachers and VTAE teachers is a violation of

657

the equal protection clause of the fourteenth amendment to the United States Constitution. We conclude that the legislature specifically authorized the VTAE, under limited circumstances, to provide vocational training for public school students without department certification of the VTAE instructors. We also conclude that there is a rational basis for permitting VTAE certification of VTAE instructors of public school students in vocationally related courses. Accordingly, we affirm the order.

This dispute arises out of a contract between the Green Bay area public schools and the VTAE providing for a limited number of specified courses to be offered to public school students through the VTAE. The public school would apply class credit for these courses to the students' graduation requirements. This contract is the result of a policy adopted by the Green Bay Board of Education that provides that up to three credits of off-campus work may be counted toward the twenty credit graduation requirement. To obtain credit, the courses had to be: (1) satisfactorily completed at another educational institution; (2) unavailable in the school district's curriculum; (3) consistent with the basic time requirement for public school courses (sixty hours equals one-half credit); and (4) approved in advance by the public school principal.

The contract provided that the following six VTAE courses be offered to public school students for credit:

peripheral equipment operators-dual data stations;

preservice nursing assistant (aide);

medical terminology;

automotive services (auto mechanics/auto body);

automotive services (auto body); and

automotive services (auto mechanics).

Under the terms of the contract, the public school district reimbursed the VTAE district for the cost of VTAE instructional salaries, fringe benefits, materials, supplies and textbooks. In addition, the school district agreed to select the student participants, determine the amount of course credit for completed work, transport students to and from the VTAE and provide any necessary board and lodging. The district further contracted to cooperate in identifying and resolving problems relating to educational progress or behavior and to supervise student attendance. The offered courses were taught by VTAE instructors who were certified under VTAE requirements, but not by the department. The following semester the same contractual arrangement existed in regard to the following four courses:

floppy disk-data entry;

preservice nursing assistant (aide);

automotive services (auto mechanics);

and

automotive services (auto body).

The association petitioned the superintendent of public instruction to withhold state aid from the school district as provided by sec. 121.006, Stats., based upon its alleged violation of sec. 118.19(1), Stats., requiring department certification for every district teacher. The superintendent held a public hearing on the petition, provided time for the receipt of additional comment and issued a decision denying the petition.

The superintendent based the decision on his conclusion that secs. 118.15 and 38.001, Stats., specifically authorized contracts between school districts and VTAEs for either full-time or part-time educational services under certain conditions as part of the state's com-

pulsory attendance law. The superintendent concluded that the general provision requiring department licensing of public school teachers did not in any way restrict specific authorization for such contractual relationships. The association appealed to the circuit court, which upheld the superintendent's decision.

Section 118.15, Stats., provides in part:

> (1)(b) Upon the child's request of the school board and with the written approval of the child's parent or guardian, any child who is 16 years of age or over may attend, in lieu of high school or on a part-time basis, a vocational, technical and adult education school. Where such a request is made and approved by the school board, the district board of the vocational, technical and adult education district in which the child resides must admit the child and must enter into the contract specified in sub. (2) . . ..

> (2)(a) If the determination is made under sub. (1)(b) for a child to attend a vocational, technical and adult education school, the district board governing the vocational, technical and adult education school shall establish appropriate vocational and technical courses in accordance with par. (b)1 and the school board of the district and the district board governing the vocational, technical and adult education school shall enter into a contract for such attendance.

> (b) The contract shall set forth:

> 1. The courses at the vocational, technical and adult education school which are approved by the state superintendent as being courses for which credit will be given to meet high school graduation requirements.

> 2. The amount per student class hour of instruction, not including any debt retirement cost, which the school board shall pay to the district board of the vocational, technical and adult education school for pupils attending such school. If either

board sends written notice to the state superintendent or the director of the board of vocational, technical and adult education that the boards are unable to reach an agreement on the amount to be paid, the state superintendent and the director shall determine the amount within 15 days of receipt of such notice.

(c) Pupils attending a vocational, technical and adult education school under this subsection may receive general education subjects at the vocational, technical and adult education school and shall be counted as pupils enrolled in the high school for all purposes including computing state aid for the school district and contractual payments therefor by the school district shall be deemed costs of operation and maintenance. No state aid may be paid to the vocational, technical and adult education district for pupils attending the vocational, technical and adult education school under this subsection.

(d) Transportation, or board and lodging under s. 121.57(1)(a), for pupils attending a vocational, technical and adult education school under this subsection shall be provided by the school district, and state aids shall be paid therefor, on the same basis as is transportation for pupils attending high school.

In addition to the foregoing provisions, ch. 38.001(3)(a), Stats., provides:

(3) The additional purposes of the vocational, technical and adult education system are to:

(a)1. Contract with secondary schools to provide educational opportunities for high school age students in order to enhance their potential for benefiting from postsecondary education and for obtaining employment.

2. Coordinate and cooperate with secondary schools to facilitate the transition of secondary school students into postsecondary vocational educa-

661

tion through curriculum articulation and collaboration.

The superintendent examined the statutory plan and concluded that the legislature had authorized the district and VTAE to enter into agreements for providing VTAE educational opportunities to high school students under certain conditions. We agree with the superintendent that the plain language of these statutes specifically authorize agreements whereby public school students receive high school credit for VTAE courses.

The association objects to this interpretation and argues that nothing in these statutes eliminates the overall requirement that every teacher be certified by the department before teaching public school students. As authority for this proposition, the association relies on sec. 118.19(1), Stats., which provides in part: "Any person seeking to teach in a public school or in a school or institution operated by a county or the state shall first procure a certificate or license from the department." The association also cites sec. 121.02(1)(a), which provides: "Each school board shall: (a) Ensure that every teacher, supervisor, administrator and professional staff member holds a certificate, license or permit to teach issued by the department before entering on duties for such position."

The resolution of this issue requires statutory interpretation, which is a question of law we review without deference to the trial court's decision. *See R.J. v. Winnebago Co.,* 146 Wis. 2d 516, 519–20, 431 N.W.2d 708, 709 (Ct. App. 1988). However, because this matter involves the review of an administrative action relating to the superintendent's experience and specialized knowledge in regard to public education and certification of public school instructors, this court will give great weight to the

superintendent's interpretation of the relevant statutes because the statutes being interpreted relate directly to the purpose of the superintendent's office. Sec. 227.57(10), Stats.

We interpret secs. 118.15 and 38.001(3)(a), Stats., to permit cooperation even if the VTAE instructors are not certified by the department. The statutes do not require department certification of the VTAE instructors as a condition to such contracts. The legislature enacted these statutes with full knowledge that the VTAE was governed by its own board and established its own certification requirements for instructors, just as the public school system set its own certification requirements under the direction of the department and superintendent. *See State ex rel. McDonald v. Circuit Court for Douglas County,* 100 Wis. 2d 569, 577-78, 302 N.W.2d 462, 466 (1981).

Nevertheless, the legislature specifically authorized contracts under which public school students would be given credit for VTAE offerings. It is difficult to imagine that the legislature intended to allow cooperation between these two systems only if VTAE instructors met the department's certification requirements. In the absence of any language so providing, and in deference to the public policy reflected in these statutes, we decline to read such a requirement into the language of secs. 118.15 and 38.001(3)(a), Stats.

Furthermore, the relevant provisions of secs. 118.15 and 38.001, Stats., were enacted subsequent to the certification provisions in sec. 121.02, Stats. Sections 118.15 and 38.001 also specifically authorize agreements such as these between the district and the VTAE. We rely upon the accepted rule of construction that the most recent and most specific statute prevails when construing stat-

utes that appear to be in conflict. *C.S. v. Racine County,* 137 Wis. 2d 217, 224, 404 N.W.2d 79, 83 (Ct. App. 1987).

The association argues that this interpretation is contrary to the attorney general's expressed opinions in 68 Op. Atty. Gen. 148 (1979) and 68 Op. Atty. Gen. 249 (1979). The attorney general concluded that the language of sec. 118.19(1), Stats., providing that any person seeking to teach in a public school or a school or institution operated by a county or the state shall first secure "a certificate or license from the department," precluded VTAE instructors from teaching in the public school system unless certified by the department.

While the 1979 attorney general opinions reached that conclusion, we note that attorney general opinions are merely persuasive, nonbinding authority upon a reviewing court. *See Joint School Dist. No. 1 v. United States,* 422 F. Supp. 576 (E.D. Wis. 1976). In addition, there have been significant legislative changes since 1979. We note that the relevant provisions of secs. 118.15 and 38.001, Stats., specifically authorize contracts for VTAE offerings to public school students were enacted after these opinions were issued. We conclude that the legislative changes occurring since these opinions were issued in 1979 significantly diminish any persuasive authority that such opinions may have had.

The association further argues that the department acknowledged the association's proposed interpretation when the department attempted to introduce a bill specifically authorizing resource sharing and cooperative offerings in 1983. At the time this legislation was introduced, the department indicated that the legislation was necessary because current law restricted VTAE offerings to public school students. The association argues that the legislature's failure to adopt the provisions of the

offered bill and the department's "acknowledgment" that these provisions were necessary are a sufficient basis to require this court to conclude that the current statutory scheme does not authorize such agreements in the absence of departmental certification of VTAE instructors.

While the legislative history cited by the association is some evidence of a legislative intent to prevent VTAE instructors from teaching vocational subjects to public school students, it is neither conclusive on this question nor sufficient to overcome other evidence of a contrary legislative intent. The clear language of the most recent and more specific statutes regarding licensing indicates a legislative intent to permit VTAE instructors to teach a limited number of courses to public school students under specific circumstances. This language, together with the deference due the superintendent's interpretation, is sufficient to support our conclusion that the legislature intended to permit VTAE instructors to teach public school students without department certification.

Lastly, the association argues that our interpretation denies public school teachers the constitutional guarantee of equal protection. The association argues that the requirement that public school teachers be certified but that VTAE teachers who also teach public school students need not be certified, is constitutionally infirm. In order to comply with equal protection requirements, we need only find that a rational basis exists for the state to authorize different requirements for certification in different disciplines. *See Montgomery Ward & Co., Inc. v. Department of Rev.,* 142 Wis. 2d 772, 781, 419 N.W.2d 348, 351-52 (Ct. App. 1987). The appropriateness of different certification requirements for stan-

dard high school courses and for vocationally related courses is apparent. In fact, the association even concedes in its brief that, "[O]bviously, the skills and requirements needed to teach in an adult vocational technical system are very different from those needed to teach public school children." Because there is a rational basis for distinguishing between traditional secondary education and vocational education certification requirements, we conclude that there is no merit to the contention that our interpretation violates the requirements of equal protection.

In summary, the Wisconsin statutes authorize a program of cooperation between the district and the VTAE system without requiring department certification of VTAE instructors who teach high school students under the programs. The different certification requirements resulting from this statutory scheme do not violate the equal protection clause of the fourteenth amendment of the United States Constitution. Accordingly, we affirm the decisions of the superintendent and the circuit court.

*By the Court.*—Order affirmed.